UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
Maureen Reininger,

        Plaintiff,

     v.                             11-CV-7245(DAB)

                                      MEMORANDUM AND ORDER

The New York City Transit Authority
and Margaret O'Halloran,


         Defendants.
------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Plaintiff Maureen Reininger filed suit against Defendants
New York City Transit Authority and Margaret O'Halloran for
allegedly discriminating against her on the basis of sex, age
and disability. Before the Court is Defendants' Motion for
Summary Judgment based on the doctrine of res judicata. For the
reasons stated below, Defendants' Motion for Summary Judgment is
GRANTED.

## I.   Background

### A. Factual Overview

    Plaintiff Maureen Reininger was a Real Estate Manager in
the Department of Buses for Defendant New York City Transit
Authority ("NYCTA") from 2003 to 2010. (Compl. ¶ 12, dkt. 1-1)
("SDNY Compl.") On December 8, 2008, Defendant Margaret

O'Halloran became Plaintiff's direct supervisor. (SDNY Compl. ¶ 14.) Plaintiff alleges that Defendant O'Halloran made various inappropriate advances toward her: in December 2008, Plaintiff claims O'Halloran invited Plaintiff to change clothes at her home before attending a scheduled office Christmas party; in mid-January 2009, Plaintiff claims O'Halloran invited Plaintiff to her home for dinner which would not be ready until 9 or 10 in the evening; Plaintiff also claims O'Halloran asked for photographs of her taken at a previous Christmas party. (Id. ¶¶ 18-21.) At the same time, Plaintiff alleges that Defendant conferred certain favors on her, such as assigning her a preferred work shift, giving her an exclusive parking spot, and moving Plaintiff from a windowless office to a larger, windowed office. (Id. ¶ 22.)

In February 2009, O'Halloran's behavior and demeanor towards Plaintiff allegedly changed, becoming dismissive and even "abusive." (Id. ¶ 25.) Plaintiff believed this was in reaction to Plaintiff rebuffing Defendant's unwelcome overtures. Defendant allegedly began to call Plaintiff "lazy" and "overpaid," left angry voice messages, and kept her well past the end of her shift. (Id. ¶ 30.) According to Plaintiff, over the next three months O'Halloran "cancelled all of Plaintiff's work privileges, such as changing her work shift, denying her

request to go to a doctor's appointment, requiring her to move back into a smaller, windowless office." (Id. ¶ 33.)

Plaintiff was served with two "Disciplinary Write Ups for Non-Performance" in June 2009 for her behavior and work performance. (Id. ¶¶ 36–37.) In the ensuing months, Plaintiff missed work and was treated several times for psychiatric distresses. (Id. ¶¶ 40–52.) On March 12, 2010, Plaintiff was offered a buyout package for early retirement from the NYCTA. (Id. ¶ 63.)

On March 19, 2010, Plaintiff was recommended for immediate dismissal by O'Halloran. On August 16, 2010, after several disciplinary Step I and Step II hearings, Plaintiff was demoted to the level of associate staff analyst. (Id. ¶¶ 54–56.)

B. Procedural History

On May 17, 2010, Plaintiff filed a Charge of discrimination against the NYCTA with the Equal Employment Opportunity Commission. (Defs.' Local Rule 56.1 Statement of Facts ("Defs.' 56.1") ¶ 25.) In the EEOC Charge, Plaintiff claimed she had been sexually harassed by O'Halloran and had been discriminated against based on her age, sex, and disability. (Id. at ¶ 26.)

On June 23, 2010, Plaintiff filed an action in the Eastern District of New York, against Defendants NYCTA, Margaret O'Halloran, and Jennie Mandelino, 10-cv-02881 (CBA) (JMA) ("EDNY action"). (Id. at ¶ 33.) In Plaintiff's Second Amended Complaint

3

in the EDNY action ("EDNY Compl."), Plaintiff only named Defendant NYCTA.[1] Plaintiff alleged violations in that Complaint of the Fair Labor Standards Act ("FLSA") for failure to pay overtime wages, New York Labor Laws, and the Consolidated Omnibus Budget Reconciliation Act. (EDNY Compl. ¶¶ 10-53.) Note that by the time Plaintiff's initial EDNY Complaint and Amended Complaints were filed, Defendant O'Halloran's alleged sexual harassment of Plaintiff had already taken place and was presumably known to Plaintiff.

Defendant NYCTA and Plaintiff Renninger executed a stipulation of dismissal with prejudice in the EDNY litigation on April 19, 2011. The stipulation was so ordered by the Court on July 8, 2011, and entered on July 11, 2011. (Defs.' 56.1 ¶ 55.)

Meanwhile, the EEOC issued a right-to-sue letter to Plaintiff on June 29, 2011. Plaintiff filed suit in New York State Supreme Court on September 27, 2011 alleging violations of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights

---

[1] It is unclear from the Record before the Court why O"Halloran was not included in the Second Amended Complaint in the EDNY action. Defendants in the instant action do proffer, however, that O'Halloran was represented by NYCTA counsel in the EDNY proceedings and that the NYCTA paid her legal bills. (Defs.' 56.1 ¶ 116.)

Law. (SDNY Compl. ¶ 1.) On October 14, 2011, Defendants removed the action to the SDNY, which is presently before the Court ("SDNY action"). (See Dkt. 1.)

On May 25, 2015, Defendants moved for Summary Judgment to Dismiss the Complaint on the basis of res judicata. (See Dkt. 46.)

A summary of the relevant sequence of events can be found below:

| Date | Event |
|---|---|
| December 8, 2008 | Defendant Margaret O'Halloran becomes Plaintiff Maureen Reininger's direct supervisor. |
| December 2008 | Plaintiff claims O'Halloran invited Plaintiff to change her clothes at her home before a Christmas party. |
| December 2008 | Plaintiff claims O'Halloran asked for photographs taken of Plaintiff at a previous Christmas party. |
| December 2008 – January 2009 | Plaintiff claims O'Halloran conferred certain benefits on her, such as giving her an exclusive parking spot and moving Plaintiff from windowless office to a larger, windowed office. |
| January 2009 | Plaintiff claims O'Halloran invited her to a late dinner at her home. |
| February 2009 | Plaintiff claims O'Halloran's behavior changed and that O'Halloran called plaintiff "lazy" and "overpaid," keeping her well past the end of her shift. |
| February 2009 – May 2009 | Plaintiff claims O'Halloran cancelled her work privileges such as denying preferred shift requests and requiring her to move back into a smaller, windowed office. Plaintiff also claims O'Halloran kept her beyond the end of her shift. |
| June 2009 | Plaintiff served with two "Disciplinary Write Ups for Non-Performance" from O'Halloran based on poor work performance and insubordination. |

5

| June 2009 – March 2010 | Plaintiff misses work and treated several times for psychiatric distresses. |
|---|---|
| March 12, 2010 | Plaintiff offered buyout for early retirement from the NYCTA. |
| March 19, 2010 | Plaintiff recommended for immediate dismissal by O'Halloran. |
| May 17, 2010 | Plaintiff files charge of discrimination against NYCTA with EEOC alleging sexual harassment and discrimination claims based on her age, sex, and disability. |
| June 23, 2010 | Plaintiff files EDNY action against NYCTA and O'Halloran alleging violations of the FLSA for unpaid overtime, New York Labor Laws, and Consolidated Omnibus Budget Reconciliation Act. |
| August 6, 2010 | Plaintiff files Second Amended Complaint naming only NYCTA as Defendant. |
| August 16, 2010 | After Step II disciplinary hearing, Plaintiff demoted to level of staff analyst. |
| April 19, 2011 | Defendant NYCTA and Plaintiff Reininger execute stipulation of dismissal with prejudice in the EDNY litigation. |
| June 29, 2011 | EEOC issues right-to-sue letter. |
| July 11, 2011 | EDNY Court enters judgment approving stipulation of dismissal. |
| September 27, 2011 | Plaintiff files suit in New York State Supreme Court alleging violations of Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law. |
| October 14, 2011 | Defendants remove New York State Court suit to the SDNY. |

## II.  Discussion

### A. Summary Judgment Standard

A Court should grant Summary Judgment when there is "no genuine dispute as to any material fact" and the moving Party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005); 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d ed. 1983). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).

The moving Party has the burden of showing that there are no material facts in dispute, and the Court must resolve all ambiguities and draw all reasonable inferences in favor of the Party opposing the Motion. Bickhardt v. Ratner, 871 F. Supp. 613, 616 (S.D.N.Y. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Genuine issues of material fact cannot be created by conclusory allegations. See Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). Summary Judgment is appropriate only when, after drawing all reasonable inferences in favor of a non-movant, no reasonable juror could find in favor of that

party. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

B. Res Judicata

The doctrine of res judicata, or claim preclusion, bars relitigation of a case between the same parties. "[A] judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end." Grubb v. Public Utils. Comm'n of Ohio, 281 U.S. 470, 479 (1930); see also Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597 (1948) ("[T]he parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'") (quoting Cromwell v. Cty. of Sac, 94 U.S. 351, 352 (1877)); Harborside Refrigerated Servs., Inc. v. Vogel, 959 F.2d 368, 372 (2d Cir. 1992); Saud v. Bank of N.Y., 929 F.2d 916, 919-20 (2d Cir. 1991). Thus, res judicata "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." Clarke v. Frank, 960 F.2d 1146,

8

1150 (2d Cir. 1992); see also Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992); Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992).

"Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." NLRB v. United Techs., 706 F.2d 1254, 1260 (2d Cir. 1983).

In order to prove that a suit is barred on res judicata grounds, the Second Circuit looks to whether the earlier decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985) (finding subsequent Trustee suit for equitable subordination in bankruptcy proceedings was barred res judicata by prior dismissed suit alleging violations of the SEC Act and unlawful restraints on trade).

1. Final Judgment on the Merits

Plaintiff's EDNY action was a final judgment on the merits. The action was voluntarily dismissed with prejudice by stipulation on July 11, 2011. (Affirmation of Kathy R. Perry in

Support of Defs.' Mot. for Summary Judgment, Ex. 24.) "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1996); see also Gianatasio v. D'Agostino, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012) ("[I]t must be noted that [a] judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment." (internal quotations omitted)).

2. Court of Competent Jurisdiction

It is undisputed that the EDNY was a Court of competent jurisdiction. Jurisdiction was not challenged in the EDNY action. See Stoll v. Gottlieb, 305 U.S. 165, 171–72 (1938) ("Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. . . . After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact."); Shoshone Mining Co. v. Rutter, 177 U.S. 505, 506 (1900) (explaining competency of federal courts).

10

3. Privity and Parties

    a. Privity

Third, Defendants O'Halloran and the New York City Transit Authority are in privity with one another. "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367–68 (2d Cir. 1995); see also Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977) ("[O]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation.").

Though O'Halloran was named as a Defendant in the original Complaint and First Amended Complaint in the EDNY Action, Plaintiff did not name O'Halloran in the Second Amended Complaint. Furthermore, the stipulation of dismissal was signed only by NYCTA, not by O'Halloran. It is unclear based on the EDNY record why O'Halloran was not party to the Second Amended Complaint. However, "[i]t is well settled in this circuit that literal privity is not a requirement for res judicata to apply. . . . Instead, a party will be bound by the previous judgment if his 'interests were adequately represented by another vested

11

with the authority of representation.'" Monahan v. N.Y. City
Dep't of Corrs., 214 F.3d 275, 285 (2d Cir. 2000) (citing
Alpert's Newspaper Delivery, Inc. v. The N.Y. Times Co., 876
F.2d 266, 270 (2d Cir. 1989).

"Generally, an employer-employee or agent-principle
relationship will provide the necessary privity for claim
preclusion with respect to matters within the scope of the
relationship, no matter which party is first sued." 18 Moore's
Federal Practice 3d § 131.40[3][f] (Matthew Bender ed.). Indeed,
courts have long recognized that privity exists between
employees and their employers for res judicata purposes. See,
e.g., Watson v. Mayo, No. 07 Civ. 54 (NRB), 2008 WL 538442, at
*8 (S.D.N.Y. Feb. 26, 2008); Amadsau v. Bronx Lebanon Hosp.
Ctr., 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y.
Jan. 21, 2005).

At all times relevant to the EDNY action, Defendant
O'Halloran was employed by Defendant New York City Transit
Authority. (Defs.' 56.1 ¶¶ 4-8.) Defendants O'Halloran and New
York City Transit Authority were named as Defendants in the EDNY
Complaint and the First Amended Complaint. The NYCTA's Office of
the General Counsel represented O'Halloran in the EDNY action
and she was not required to pay for her defense. (Id. at ¶ 116.)

Furthermore, it is clear that Plaintiff knew of O'Halloran
during the EDNY action (as evidenced by the fact that O'Halloran

was initially a named Defendant). See Official Publ'ns, Inc. v. Kable News Co., 811 F. Supp. 143, 147 (S.D.N.Y. 1993) ("The doctrine of res judicata also bars litigation of the same causes of action against defendants who were known to plaintiff at the time the first action was filed but were not named where the newly-added defendants have a sufficiently close relationship to the original defendant."). Thus, because it is clear that O'Halloran (and her alleged harassment) were known to Plaintiff at the time she filed and terminated the EDNY suit, and because O'Halloran and the NYCTA enjoy an employer-employee relationship, the EDNY and SDNY actions involve parties that are in privity with one another.

b. Employee-Supervisor Liability

In addition to holding, supra, that O'Halloran and the NYCTA are in privity with one another and are therefore both subject to res judicata, the Court finds that O'Halloran could still not be held liable under the Second Circuit's holding in Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995). In Tomka, the Second Circuit held that an employee-supervisor could not be held liable under Title VII if the employer-entity itself is not also liable, because an individual employee does not meet the definition of "employer" in the statutory text of Title VII. See id. at 1313-17 ("We now hold that individual defendants with

13

supervisory control over a plaintiff may not be held personally liable under Title VII."); id. at 1314 ("[I]t was inconceivable that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." (internal quotation omitted)). Thus, because Defendant NYCTA is not liable under the doctrine of res judicata, Defendant O'Halloran cannot be held personally liable under Title VII.

Plaintiff settled the ENDY action with Defendant NYCTA (and initially named both O'Halloran and the NYCTA in her first two Complaints). The Second Circuit stated that having plaintiffs settle with employer-entity defendants but continue against individuals would result in undesirable outcomes. Id. at 1315-17 ("Moreover, the practical implications of agent liability would create potential inequities that Congress could not have intended when it enacted the CRA of 1991.").

The same logic can be applied to Plaintiff's ADEA claims, as the "Supreme Court has held . . . that where an ADEA provision can be traced to a corresponding section of Title VII . . ., courts should construe the provisions consistently." Milano v. Barnhart, No. 05 CIV. 6527 KMW DF, 2007 WL 2042954, at *2 (S.D.N.Y. July 12, 2007) (citing Oscar Mayer & Co. v. Evans, 441 U.S. 750, 755-56 (1979). Thus, "individuals who do not otherwise meet the statutory definition of "employer" cannot be

14

liable under Title VII or the ADEA." Storr v. Anderson Sch., 919
F. Supp. 144, 148 (S.D.N.Y. 1996); see also Milano, 2007 WL
2042954, at *2 ("Because the ADEA should be construed
consistently with Title VII, this Court has routinely extended
the reasoning in Tomka to cases brought against private
employers under the ADEA, and has similarly applied this
reasoning in ADEA cases against state employers." (citing Martin
v. Chemical Bank, No. 95-9015, 96-9365, 1997 U.S. App. LEXIS
32022, at *8-9 (2d Cir. Nov. 10, 1997); Houston v. Fidelity, No.
95 Civ. 7764(RWS), 1997 U.S. Dist. LEXIS 2366, at *23 (S.D.N.Y.
Mar. 6, 1997); Roddini v. City Univ. of New York, No. 02 Civ.
4640(LAP), 2003 U.S. Dist. LEXIS 2549, at *14 (S.D.N.Y. Feb. 21,
2003); Darcy v. Lippman, No. 03 Civ. 6898(KMW)(DCF), 2006 U.S.
Dist. LEXIS 91893, at *10-12 (S.D.N.Y. Dec. 19, 2006)).

     Similarly, there is no employee-supervisor liability under
the ADA without employer-entity liability. See, e.g., Cerrato v.
Durham, 941 F. Supp. 388, 395 (S.D.N.Y. 1996) ("Because the
Court of Appeals analysis clearly precludes individual liability
under the ADA or Title VII, plaintiff fails to state a claim
against individual defendants Durham and Heslin under either
statute."); Yaba v. Cadwalader, Wickersham & Taft, 931 F.Supp.
271, 274 (S.D.N.Y. 1996) ("[T]he ADA, like Title VII, does not
provide for liability by individual employees."); Harrison v.
Indosuez, 6 F. Supp. 2d 224, 229 (S.D.N.Y. 1998) ("[A]s Title

VII and the ADA define 'employer' identically, the Court's holding in <u>Tomka</u> clearly supports the rejection of personal liability under the ADA as well.")

Thus, in addition to finding <u>supra</u> that O'Halloran and Defendant NYCTA are in privity with one another (and that res judicata applies to them both), all of Plaintiff's federal claims against O'Halloran must fail pursuant to <u>Tomka</u>. To the extent that any state claims might somehow survive against O'Halloran, this Court declines to exercise its supplemental jurisdiction over such claims. 28 U.S.C. § 1367(c)(3) (2012) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . .").

4. Same Cause of Action

The EDNY and SDNY suits spring from the same cause of action.

Res judicata acts as a bar "not only as to what was pleaded, but also as to what could have been pleaded." <u>In re Teltronics Servs., Inc.</u>, 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata."); <u>see also</u> <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36, 38 (2d Cir. 1992)

16

("[R]es judicata or claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." (internal quotations omitted)).

First, it must "be determined that the second suit involves the same 'claim'—or 'nucleus of operative fact'—as the first suit." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997) (finding subsequent suit asserting a Commerce Clause violation was barred res judicata based on a prior suit asserting violations of the Federal Boundary Waters Act). In order "[t]o ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000) (quoting Restatement (Second) of Judgments § 24(2) (1982)) ("[A] plaintiff cannot avoid the effects of res judicata by splitting his claim into various suits, based on different legal theories . . . .") (internal quotations omitted)) (finding a subsequent suit based on violations of the Fair Housing Act, Establishment and Free Exercise Clauses of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment, was barred res

judicata based on a prior suit based on zoning discrimination,
Equal Protection, and Freedom of Assembly).

In a case with a nearly identical procedural history, the
Second Circuit found that a subsequent suit based on Title VII
was barred res judicata by an earlier suit based on the Labor
Management Relations Act ("LMRA"). In Woods v. Dunlop Tire
Corp., the Plaintiff was terminated from her employment and she
soon thereafter filed a complaint with the EEOC and the New York
State Department of Human Rights alleging race and sex
discrimination. 972 F.2d 36, 37 (2d Cir. 1992). While the
administrative proceedings were still pending, Plaintiff filed
suit in District Court alleging violations of the LMRA. The
District Court eventually granted Defendant's Motion for Summary
Judgment on the LMRA claim. The EEOC then issued a right-to-sue
letter and Plaintiff filed a new suit in District Court alleging
violations of Title VII. Id. The District Court in that case
granted Defendant's Motion for Summary Judgment on res judicata
grounds.

The Second Circuit affirmed. The Circuit noted that
"[e]ssentially the same underlying occurrence was relevant to
both the LMRA and Title VII claims. Both actions centered around
Dunlop's firing of Woods, the reasons for termination, and her
employment history, physical limitations, and qualifications."
Id. at 38-39. "It is this identity of facts surrounding the

18

occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint." <u>Id</u>. at 39. Thus, "it is abundantly clear that the two actions involved the same cause of action for res judicata purposes." <u>Id</u>.; <u>see also</u> <u>id</u>. at 38 ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.").

In the instant case, the operative Complaints of the EDNY and SDNY actions make clear that both suits spring from the same nucleus and are related in time, space, and origin. Both the EDNY and SDNY actions stem from Plaintiff's employment with the NYTCA and subsequent treatment as an employee. Specifically, both actions refer to the NYCTA and O'Halloran's alleged retaliatory actions against Plaintiff from 2009–2010. For example, the EDNY Complaint states: "In April/May 2009, Manager O'Halloran reassigned Plaintiff from a windowed office to a windowless office. Manager O'Halloran set out to humiliate Plaintiff by stripping Plaintiff of all vestiges of managerial status and by relegating her to the status of a clerical worker." (EDNY Compl. ¶ 14.) The SDNY Complaint, in turn, notes: "Over the next three (3) months . . . O'Halloran's behavior

toward Plaintiff became even worse. In fact, O'Halloran would call the Plaintiff repeatedly and bang up on her or leave angry voice messages. O'Halloran also canceled all of Plaintiff's work privileges, such as changing her work shift, denying her request to go to a doctor's appointment, requiring her to move back into a smaller windowless office." (SDNY Compl. ¶ 32.)

Both Complaints refer specifically to Defendants' alleged retaliatory actions following the filing of Plaintiff's EEOC Complaint. (Compare EDNY Compl. ¶ 51 ("Plaintiff had a pending EEO complaint of sex discrimination and retaliation, and submits that Defendant's omission to provide timely notification constitutes one among a plethora of retaliatory actions.") with SDNY Compl. ¶ 76 (noting "the retaliation set forth in the above paragraphs".) Both Complaints also refer to the fact that O'Halloran kept Plaintiff past the end of her shift. (Compare EDNY Compl. ¶ 14; ¶ 24 (describing how O'Halloran "micromanaged Plaintiff's work hours" and "permitted Plaintiff to work more than 40 hours per week without compensating her as provided under the FLSA") with SDNY Compl. ¶ 30 (noting O'Halloran "routinely . . . kept her well past the end of her shift".)

Plaintiff's work performance from 2009-2010 was also referred to repeatedly in both the SDNY and EDNY Complaints. (Compare, e.g., EDNY Compl. ¶ 15 (discussing O'Halloran's views of Plaintiff's work performance) with SDNY Compl. ¶¶ 36-37

20

(discussing same work performance).) Furthermore, there was substantial overlap in discovery between the EDNY and SDNY actions. (See Def.'s Corr. Memo Law in Support of Def.'s Mot. for Summary Judgment 11) (outlining overlap in Plaintiff's discovery requests between EDNY and SDNY actions pertaining to Plaintiff's EEOC investigation and Plaintiff's demotion and dismissal). Finally, both the EDNY and SDNY Complaints culminate with the exact same reference to Plaintiff's Step I disciplinary hearing on March 19, 2010. (Compare EDNY Compl. ¶ 7, ¶ 46 ("On March 19, 2010, Manager Maureen O'Halloran . . . conducted a step I hearing, immediately placed Plaintiff on suspension without pay . . . .") with SDNY Compl. ¶ 54 ("Finally, on March 19, 2010, Plaintiff was recommended for immediate dismissal by O'Halloran . . . .").)

The above examples are just a few indicia of "a substantial overlap in the core elements of the conduct and actions complained of in the two lawsuits." Cameron v. Church, 253 F. Supp. 2d 611, 621-22 (S.D.N.Y. 2003). Both the EDNY and SDNY suits spring from the same employment relationship, disciplinary action, termination, and alleged retaliation, including but not limited to, a demotion to non-managerial status and a failure to pay overtime wages. The two suits form "a convenient trial unit." Waldman, 207 F.3d at 108.

Plaintiff argues that she could not pursue different claims in the EDNY litigation until after the EEOC ruled on the EEOC administrative claims, which occurred on June 29, 2011, after the EDNY action was instituted and the stipulation of dismissal was signed (though before the judgment was entered). See Pl. Opp. 18 (arguing Defendants' res judicata arguments should fail "because they all ignore the fact that Plaintiff could not pursue the different claims in the current case until after USEEOC ruled on those claims"). However, this exact argument was swiftly rejected in Woods; "We cannot agree with amicus curiae's contention that this result will put future Title VII plaintiffs to the impermissible 'Hobson's choice of either leaving their charges in the administrative process, . . . or asking for a right to sue letter and abandoning the administrative mechanism in order to join all claims in a single lawsuit." 972 F.2d at 40-41. The Circuit went on:

> While it is true that Woods was forced to bring her LMRA suit prior to completion of the administrative proceedings or else abandon that claim because the six-month statute of limitations on the LMRA claim was about to expire, Woods had two available courses she could have followed in order to avoid the sting of res judicata. As a first alternative, Woods could have filed her LMRA claim and then sought a stay in the district court pending the outcome of her Title VII administrative proceedings. . . . Once administrative review had been completed, Woods could have then joined her Title VII claim with her LMRA claim by amending the complaint in the LMRA suit. As a second alternative, Woods simply could have filed the LMRA action, sought a right to sue notice on her Title VII

> claim from the EEOC after 180 days. . . ., and then
> amended the complaint in her LMRA suit to include the
> Title VII claim. Had Woods chosen either of these two
> alternatives, she could have preserved her Title VII
> claim. Under the circumstances revealed, we find no
> reason to excuse Woods' failure to take these minimal
> steps necessary to preserve each claim independently,
> and conclude that her Title VII claim is not exempt
> from the bar of res judicata. Id. at 41 (internal
> citations omitted).

Therefore, just as in Woods, because Plaintiff here failed

either to file her FLSA claims and seek a stay pending the

outcome of the EEOC proceeding in the EDNY action, or else amend

the EDNY action after seeking a right-to-sue letter to include

claims of violations of Title VII, ADEA, ADA, the NYSHRL, and

the NYCHRL, she is barred from later asserting Title VII et al.,

claims arising from the same nucleus of operative fact in a

subsequent SDNY suit. Moreover, the EEOC issued Plaintiff a

right-to-sue letter on June 29, 2011. On July 8, 2011, Judge

Amon in the EDNY so ordered the fully executed stipulation of

dismissal, which was filed with the Court on July 11, 2011. Had

she chosen to, Plaintiff could have amended the EDNY complaint

to add her Title VII et al., claims before judgment was entered

because she received the right-to-sue letter beforehand.

Plaintiff cannot avoid the preclusive effect of res judicata

because she failed to preserve her Title VII et al., claims.

C. Plaintiff's April 2010 Letter

As to Plaintiff's final argument, that the EDNY stipulation of dismissal was "entered into by [Plaintiff's then-]counsel without her knowledge, and in direct contravention to her written instruction to counsel to discontinue the action without prejudice," (Pl. Opp. 20) the Court finds this argument entirely baseless.

Plaintiff relies on an unsworn letter dated April 15, 2010 from Plaintiff to her then-attorney requesting that the attorney "file a motion to dismiss my lawsuit without prejudice." (Reply Aff. of William B. Flynn, Ex. 10.) First, Plaintiff never filed a Motion to Vacate the EDNY judgment entering dismissal. Plaintiff cannot now collaterally attack the finality of a prior judgment for the purposes of avoiding res judicata. Second, the letter was unsworn. The Court does not consider unsworn statements on a Motion for Summary Judgment. See United States v. All Right, Title & Interest in Real Prop. & Appurtenances, 77 F.3d 648, 657-58 (2d Cir. 1996) ("The submission of Truong's unsworn letter was an inappropriate response to the government's motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court. See, e.g., Fed.R.Civ.P. 56(e) (response to properly supported summary judgment must be 'by affidavits or as otherwise provided in this

24

rule')"); see also Fall v. N.Y.S. United Teachers, 289 F. App'x 419, 421 n.3 (2d Cir. 2008) (rejecting use of unsworn reports in Summary Judgment Motion).

And even notwithstanding the two points above, the April 15, 2010 letter was dated a whole two months before the initial complaint in the EDNY litigation was filed (which was on June 23, 2010). It defies common sense to regard an April 2010 letter requesting dismissal as applying to a June 2010 EDNY action which had not yet even commenced. Therefore, the EDNY dismissal was final and binding on Plaintiff and Defendants.

III.  Conclusion

For the reasons stated herein, Plaintiff's claims are dismissed. Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to close the docket in this case.


SO ORDERED.

Dated:     December 22, 2016
           New York, New York


*Deborah A. Batts*
Deborah A. Batts
United States District Judge